JAMES E. MILLER and another *vs.* JAMES THOMPSON and another

*Vessel—sale of by master—notice to owners.   Trover.*

The sale, by the master, of such parts of a vessel as belong to part-owners who were not, but might have been, notified by telegraph in season to act in the premises before the sale, is void.

Thus a vessel went ashore on one of the ' Wolves' in the Province of New Brunswick, on the morning of July 6, and the master, leaving her in charge of the mate, arrived at noon of the same day in Eastport. Between Eastport and New York there was constant telegraphic communication, and a telegram sent by the master on his arrival in Eastport, to the plaintiffs resident in New York, would, in the usual course of business, have received an answer several hours before the sale, which took place in the afternoon of the next day. *Held*, that the sale was void.

One of the defendants bid off a vessel at a sale thereof by the master, which was void for want of notice of the disaster to the plaintiffs who were part-owners. The other defendant paid part of the purchase-money, the expenses of fitting her for sea, insured her in his own name, participated in her earnings, and refused to recognize the plaintiffs as owners of any part of her. *Held*, that trover would lie.

DICKERSON, J.   Trover for one-sixteenth of the brig L. L.

Wadsworth. The report of the evidence in *Gates et als.* v. *Thompson*, 57 Maine, 442, is made a part of this case.

From that report it appears that the vessel went ashore on one of the 'Wolves,' about twelve miles from Eastport, on the morning of July 6, 1866. The master arrived in Eastport about noon of the same day, and notified one of the owners who resided in Calais, but neglected to notify the plaintiffs, in that action, who had their place of business, and one of whom resided, in Calais. The owner who was notified, arrived at Eastport on the evening of the same day, and was present at the sale of the vessel which took place on the afternoon of the next day. Under this state of facts, we held that the sale by the master was void, as to the plaintiffs in that suit, because the master did not notify them of the disaster before the sale.

The principal question submitted for our decision is, whether the same rule of law is applicable to this case that obtained in *Giles et al.* v. *Thompson.* We think it is. The present plaintiffs, residing in the city of New York, were part-owners of the same vessel, were uninsured, and were not notified of the disaster until after the sale of the vessel. They repudiated the sale as soon as they heard of it. There was, at the time of the disaster, constant communication by telegraph between Eastport and New York. No reason is assigned why the master did not improve this mode of communicating with the plaintiffs, nor is any explanation given why he was careful to notify the owners who were insured, and neglected to notify those who were not insured.

The master is not restricted to any particular means of communicating intelligence of such a disaster to his owners, but is bound to use the earliest and most expeditious means ordinarily available for that purpose. He will not be justified, in such an emergency, in using the mail when the telegraph is open to him, or the stage-coach where a railroad or steamboat is available. Vessels are built, loaded and sailed, and masters are appointed with the full knowledge of the ordinary public means of intercommunication; and it is within the reasonable expectation of ship-owners,

shippers, and insurers, that the master will use the earliest and most expeditious means, ordinarily available, for communicating such important information to the parties directly interested. It is of the very essence of the common law, that it is capable of adapting itself to the improvements in the arts, and the discoveries in the sciences, that constitute so distinguishing a feature in modern civilization; and it is the duty of the court to extend rather than restrict the scope of its usefulness in this direction. Indeed, it would be a reproach upon the common law, to withhold the application of its benign principles from the demands, the wants, and the vicissitudes of human development and progress.

If the master had notified the plaintiffs of the disaster by telegraph, upon his arrival at Eastport, according to the usual course of business, in that line, he would have received an answer from them several hours before the sale took place. He had authority to act in the premises, only when the plaintiffs had no opportunity to speak for themselves. To sell the vessel, or run the risk of getting her off, was a question upon which they had a right to be heard. The chance of recovering the vessel was worth as much to them as it was to anybody. It was not necessary that they should be present themselves, or dispatch an agent from New York to act for them. They could have sent instructions to the master or some commission merchant in the vicinity; but the inexcusable neglect of the master deprived them of the opportunity of doing either. For this cause the auction sale was void, and the purchasers of the vessel acquired no title whatever to the plaintiff's share in her.

It is argued in defense that McLarren is not liable upon the ground that the vessel was bid off by Thompson, the other defendant. But we think this objection is not well taken. The payment by McLarren of a part of the purchase-money, and the expenses of fitting her for sea, his getting her insured in his own name, his employment and control of her, his participation in her earnings, and refusal to recognize the plaintiffs as owners of any

part of her, clearly bring the case within *Wood* v. *Stockwell*, 55 Maine, 86, and render him liable in trover.

*Defendants defaulted and to be heard in damages.*

APPLETON, C. J.; CUTTING, KENT, BARROWS, and DANFORTH, JJ., concurred.

*Granger & Pike*, for the plaintiffs.

*Bradbury & Bradbury*, for the defendants.